1   **WO**

2

3

4

5

6                           NOT FOR PUBLICATION

7              IN THE UNITED STATES DISTRICT COURT

8                  FOR THE DISTRICT OF ARIZONA

9

10  THE CONLON GROUP OF ARIZONA,)     No. CV-06-2065-PHX-FJM
                                )
11           Plaintiff,          )     **ORDER**
                                )
12  vs.                          )
                                )
13                               )
    CNL   RESORT   BILTMORE   REAL)
14  ESTATE, Inc., et al.,        )
                                )
15           Defendants.         )
                                )
16  _____)

17

18

19          The parties settled most of the claims in this case.  There remained for trial only

20  Conlon's claim that the Biltmore abused its discretion by using the villa units in the rental

21  pool on a complimentary basis at a greater percentage than those units bore to the number

22  of available rooms generally. After trial to the court without a jury we took the matter under

23  advisement.  We now make our Findings and Conclusions under Rule 52(a), Fed. R. Civ. P.

24          Conlon rests its case on the undisputed fact that the rental pool units constitute 17%

25  of the total rooms available at the hotel and the rental pool villas, but constitute 32% of the

26  rooms occupied on a complimentary basis.  Conlon contends that these statistics, along with

27  the Biltmore's refusal to honor its contractual obligation to provide access to its books and

28

records, show that the Biltmore breached its duty of good faith and fair dealing inherent in the rental pool agreement.

The Biltmore contends that under the express terms of the agreement, it has broad discretion to manage the rental pool units as it sees fit, including "complimentary rentals." Rental Pool Agreement, ¶ 4(b), Exhibit 1. The Biltmore claims that it managed the rental pool units in order to achieve an overall annual share of hotel occupancy income at the rate of 17%, which is the percentage by which the rental pool units bear to the aggregate of hotel and villa units available. Thus, as long as Conlon is receiving its fair share of occupancy income, the extent to which the rooms were "comped" does not matter. Moreover, the Biltmore claims that the demand for rental pool units was often less than the demand for hotel rooms and its management practices actually benefitted the rental pool unit owners. Finally, the Biltmore claims that the major reason the rental pool units were used on a complimentary basis more often than the hotel units was that there were three times as many rental pool units suitable for complimentary use than there were other suitable units in the hotel. Thus it was only natural to use the villas in order to promote business which would inure to the benefit of both the hotel and the rental pool owners.

This is an action in contract and Conlon has the burden of proof by a preponderance of the evidence. It must show that it is more probable than not that the hotel breached the agreement.

As the parties concede, the agreement is not a model of clarity. Indeed, its terms are so vague that the court *sua sponte* raised the question of whether it might be an illusory contract and thus not enforceable. Neither party, however, contends that it is illusory and therefore both ask the court to enforce its terms as best it can.

Paragraph 4(b) allows the hotel to rent the rental pool units "upon such terms and conditions, at such rental rates and to such persons as the Manager from time to time in its sole discretion may determine." It further provides that "occupancy may vary . . . as a result of quantity discounts, group or complimentary rentals or similar promotions." Conlon

1  concedes that the hotel may use the rental pool rooms on a complimentary basis, and argues

2  only that it was an abuse of that discretion to use them so extensively.

3      Under the agreement, rental unit owners derive income according to the following

4  scheme.  Under paragraph 8 of the agreement, net revenues from the rental of all the units

5  in the rental pool are to be pooled and allocated pro rata to each unit on a daily basis.  The

6  daily rental revenue is divided equally by the number of units participating "regardless of

7  whether a particular Unit generated Daily Rental Revenue on such date."  ¶ 9(ii).  The sum

8  of the daily rental revenue for each year is determined to be the "annual rental  revenue" as

9  to each unit.  ¶ 9(iii).  The hotel is paid 50% of the annual rental revenue, the rental unit

10  owner is paid the remainder, ¶ 9(iv), and it is distributed on a quarterly basis. ¶ 12.

11      There is, unfortunately, no mention of the extent to which the hotel is to use the rental

12  pool units.  Conlon does not dispute the hotel's claim that the net revenues from the rental

13  pool units have over the years been 17% of the net room revenues of the hotel.  But the 17%

14  figure is not part of the parties' contract.  It is a goal the hotel unilaterally selected as a

15  standard by which it exercises its discretion under paragraph 4(b).  It seems, though, that the

16  rental pool units should have achieved more than the average for the hotel because the hotel

17  charged more for the rental pool units.

18      We conclude that the hotel can abuse its discretion under paragraph 4(b), if it uses the

19  rental pool units on a complimentary basis in an unreasonable way.  This would have a direct

20  impact on the rental unit owners' income allocation under paragraphs 8 and 9.  It is no

21  answer to say that the rental pool unit owners are achieving income at a rate in proportion

22  to which the number of units bears to all the units available in the hotel. The question, here,

23  is  whether Conlon has proved by a preponderance of the evidence that the hotel has

24  unreasonably used the rental pool units as complimentary units.  Again, the only evidence

25  offered was the comparison between the 32% complimentary rate versus the 17% room rate.

26  It is true that the hotel failed to cooperate with Conlon in connection with opening up its

27  books.  But we do not find that that has a tendency to prove that the hotel abused its

28  discretion in connection with complimentary rooms.  They would be separate breaches.  Thus

1   we are left only with  statistics and the hotel's explanation that there are three times as many

2   rental pool unit rooms suitable for complimentary use than comparable hotel rooms.

3          We think this case is resolved by the burden of proof.  We do not believe that these

4   statistics alone are sufficient to meet Conlon's burden to show that it is more probable than

5   not that the hotel used rental pool units on a complimentary basis in a disproportionate way

6   to feather its own nest.  It is possible that the hotel may have done so, but the burden of proof

7   has not been met.  We do conclude as a matter of law that the covenant of good faith and fair

8   dealing inherent in the rental pool agreement requires the hotel to exercise its discretion

9   under ¶ 4(b) in a way that gives equal consideration to the owners of the rental pool units and

10  the hotel.  We simply do not find that the statistics alone reach the level of showing that that

11  discretion has been abused.

12         Accordingly, solely as to Conlon's claim in connection with the complimentary

13  rooms, we find in favor of the defendant Biltmore and against the plaintiff Conlon.

14         The parties have reached a settlement as to all other claims in favor of the plaintiff

15  Conlon and against the defendant Biltmore.  The parties shall lodge with the court an

16  appropriate form of final judgment consistent with this order and their stipulation.

17         DATED this 11th day of April, 2008.

18

19

20

21   _Frederick J. Martone_

22                    Frederick J. Martone
                     United States District Judge

23

24

25

26

27

28